UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RUBEN FERNANDEZ VALDIVIA, et al., | Case No. 3:26-cv-05215-TMC |
| Plaintiffs, | ORDER GRANTING MOTION FOR REMAND |
| v. | |
| HOME EXPRESS DELIVERY SERVICE LLC, | |
| Defendant. | |

## I.    INTRODUCTION

In this putative class action, Plaintiffs Ruben Fernandez Valdivia and Enrique Molina Lorenzo allege that Defendant Home Express Delivery Service LLC (doing business as Temco Logistics or "Temco") violated Washington law by failing to pay its employees their required wages and denying them meal and rest breaks. *See* Dkt. 1-1. Plaintiffs sued in Thurston County Superior Court, and Defendant removed the case to federal court, invoking diversity jurisdiction. Dkt. 1. Now before the Court is Plaintiffs' motion to remand the case to state court. Dkt. 6. Because Temco has failed to show an amount in controversy sufficient to trigger this Court's diversity jurisdiction, Plaintiffs' motion is GRANTED and this case is REMANDED to Thurston County Superior Court.

ORDER GRANTING MOTION FOR REMAND - 1

## II.    BACKGROUND

Plaintiffs filed their class action complaint in Thurston County Superior Court on January 16, 2026. They allege that Temco violated Washington's wage and hour laws by (1) engaging in a "common course" of failing to pay minimum wages for all hours worked, including by (a) requiring employees to "complete daily off-the-clock security checks" and (b) "sometimes" requiring employees to work during their meal breaks, Dkt. 1-1 ¶¶ 5.3–5.7; (2) engaging in a "common course" of willfully failing to pay overtime, because "Defendants' practices regarding off-the-clock work sometimes resulted in unrecorded overtime hours worked," *id.* ¶¶ 5.8–5.13; (3) engaging in a "common course" of meal break violations by "sometimes" requiring employees "to complete work during their meal breaks," *id.* ¶¶ 5.14–5.16; (4) engaging in a "common course" of rest break violations, "for the same reasons" employees "experienced missed or interrupted meal breaks," *id.* ¶¶ 5.17–5.19; and (5) engaging in a "common course" of failing to provide employees with paid sick leave "as a result of Defendant's failure to account for all hours worked," *id.* ¶¶ 5.20–5.21.

Temco removed the case to federal court, alleging that this Court has traditional diversity jurisdiction. Dkt. 1; *see* 28 U.S.C. § 1332(a). Plaintiffs moved to remand, arguing that Temco cannot satisfy the amount in controversy requirement. Dkt. 6.

## III.    DISCUSSION

### A.    Legal Standards

An action brought in state court is removable to federal district court if the federal court has original subject matter jurisdiction over the action. 28 U.S.C. § 1441(a). Federal diversity jurisdiction exists when more than $75,000 is in controversy and all plaintiffs are of diverse citizenship from all defendants. 28 U.S.C. § 1332(a)(1). If the plaintiff's requested damages are unclear from the face of the complaint, the defendant bears the burden of proving by a

ORDER GRANTING MOTION FOR REMAND - 2

preponderance of evidence that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1446(c)(2)(B). In a class action where removal is based on traditional diversity jurisdiction, the amount in controversy requirement is met if at least one named plaintiff exceeds the $75,000 requirement. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005).

The removing party bears the burden of proving federal jurisdiction and there is a "strong presumption against removal." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)). "The notice of removal 'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 788 (9th Cir. 2018) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014)). But "[i]f the plaintiff contests the defendant's allegation . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin*, 574 U.S. at 88. "[T]he court resolves all ambiguity in favor of remand to state court." *Hunter*, 582 F.3d at 1042 (citing *Gaus*, 980 F.2d at 566).

**B.      Temco has not proven the requisite amount in controversy.**

The parties do not dispute that there is diversity of citizenship: Plaintiffs are citizens of Washington state, and Temco is a citizen of Georgia and Delaware. *See* Dkt. 1 at 4. Only the amount in controversy is in dispute.

In their motion, Plaintiffs argue that the allegations in Temco's notice of removal are conclusory, and that they rely "on two fatal errors": first, they "improperly aggregate[] potential class-wide attorneys' fees to satisfy the jurisdictional minimum," and second, they rely "on speculative and unsupported assumptions—including a 100% violation rate for meal and rest period claims—without providing any evidence to ground these calculations." Dkt. 6 at 2.

ORDER GRANTING MOTION FOR REMAND - 3

In response, Temco submits evidence that it contends establishes the amount-in-controversy requirement for named plaintiff Valdivia. *See* Dkt. 9 at 2.[1] First, because Valdivia was paid on a piece-rate basis, Temco estimated an hourly wage of $25.05 for him and an average number of hours worked each week as 62.91. Dkt. 9 at 2–3.[2] Temco then applied a 50% assumed violation rate to his meal and rest break claims, Dkt. 9 at 5; a 100% assumed violation rate to his claims for unpaid waiting time at security checks, *id.* at 6; and a 50% assumed violation rate to his sick leave claims, *id.* at 6–7.[3] Based on those estimates, Temco calculated Valdivia's minimum total claimed damages as:

| Violation Rate | Meal Period/Rest Breaks | Waiting Time | Sick Leave | Total |
|---|---|---|---|---|
| 50% | $57,960.50 | $7,733 | $623.90 | $66,317.40 |

*Id.* at 7.

With these claimed damages, Valdivia's pro rata share of potential attorney's fees would only need to exceed $8,682.60 (otherwise stated as $75,000 – $66,317.40) to meet the amount-in-controversy requirement. While agreeing with Plaintiffs that the amount of attorney's fees attributed to Valdivia must be calculated on a pro rata basis, Temco contends this should be done by using 25% of his estimated total damages (or $16,579.35) as his estimated share of attorney's fees. Dkt. 9 at 8. Plaintiffs, in contrast, contend that the Court should multiply the amount of pro

---

[1] The Court finds that this evidence was properly submitted to support the allegations of diversity jurisdiction in the notice of removal, *see Dart Cherokee Basin*, 574 U.S. at 88, and was not a new, untimely basis for removal as Plaintiffs contend in reply. *See* Dkt. 11 at 2–4.

[2] Plaintiffs challenge the foundation for these assumptions, see Dkt. 11 at 6–7, but this need not be addressed because remand is required even using Temco's assumptions.

[3] Temco also provided estimates based on a 70% and 100% assumed violation rate for the meal/rest break and sick leave allegations, but these estimates are unpersuasive for the same reason the 50% rate is unpersuasive and do not need to be separately addressed.

ORDER GRANTING MOTION FOR REMAND - 4

rata fees needed to establish the amount in controversy for Valdivia (i.e., $8,682.61) by the number of potential class members, and then evaluate whether that overall amount of potential attorney's fees is a reasonable assumption. *See* Dkt. 11 at 7–8. Because Plaintiffs have submitted evidence that the putative class may include 240 to 300 members, *see* Dkt. 11-1 ¶¶ 3–4, and Temco has not submitted any evidence about the size of the class, Plaintiffs' method would require an assumed fee award of over $2 million for Valdivia's pro rata share to take him over the $75,000 threshold—an assumption that is not reasonable or supported by any evidence.

But even if Temco's method is used, it has not satisfied the amount in controversy because it has not submitted evidence or pointed to specific allegations (apart from the waiting time allegations) to support its assumed violation rates. As this Court has concluded in a similar case, *see Dale v. Vulcan Metals Corp.*, No. 3:25-cv-05803-TMC, 2026 WL 304527, at *3 (W.D. Wash. Feb. 5, 2026), allegations such as those in Plaintiffs' complaint support a reasonable assumed violation rate of 20% for establishing the amount in controversy.

The complaint alleges that employees were required to complete off-the-clock security screenings every day. *See* Dkt. 1-1 ¶¶ 5.3–5.7. This supports an assumed 100% violation rate for the waiting time violations. But apart from that, the complaint alleges that Temco engaged in a "common course" of wage and hour violations by "sometimes" requiring off-the-clock work and denying meal and rest breaks. *See id.* ¶¶ 5.8–5.21. Words and phrases like "common course" and "sometimes" do not imply that Temco *always* violated the Washington wage and hour laws. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (a complaint alleging a "pattern and practice" of labor law violations did not necessarily imply the pattern and practice was universally followed every time the wage and hour violation could arise). Assumptions about the amount in controversy may be reasonable if they are "founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). "Courts in the

ORDER GRANTING MOTION FOR REMAND - 5

Ninth Circuit have repeatedly approved of an assumed 20% violation rate for meal and rest period claims where, as here, the plaintiff alleges a 'policy and practice' of violations." *Arnold v. Marriott Int'l*, No. 3:24-CV-00221-RAJ, 2025 WL 1919260, at *4 (W.D. Wash. July 11, 2025) (collecting cases); *Ramirez v. Cornerstone Bldg. Brands*, No. 2:21-cv-01017-MCE-JDP, 2022 WL 1556664, at *1 (E.D. Cal. May 17, 2022) (20% violation rate was reasonable where complaint alleged violations occurring "often" or "from time to time" as well as violations resulting from "company-wide policies and procedures").

Once reasonable violation rate assumptions are applied, Valdivia's potential damages using the evidence supplied by Temco (see charts at Dkt. 9 at 5–7) looks like this:

| Violation Rate | Meal Period/Rest Breaks | Waiting Time (100% violation rate) | Sick Leave | Total |
|---|---|---|---|---|
| 20% | $23,184.20 | $7,733 | $343.07 | $31,260.27 |

Even if 25% of that total ($7,815.07) is added on as a pro rata share of attorney's fees, Valdivia's assumed damages do not approach the amount-in-controversy minimum. While perhaps Temco, as the custodian of its payroll records, could have submitted additional evidence to support its assumed violation rate, it chose not to do so. *See Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1129–30 (C.D. Cal. 2010). In the absence of that evidence, an assumed violation rate of 50% for the meal and rest break claims is not supported by the allegations of the complaint or the relevant caselaw in the Ninth Circuit or this district. Temco has therefore not met its burden to prove that this case satisfies the amount-in-controversy requirement to invoke this Court's diversity jurisdiction. Any doubt as to this Court's jurisdiction must be resolved in

ORDER GRANTING MOTION FOR REMAND - 6

favor of remand, and remand is therefore required. *Hunter*, 582 F.3d at 1042 (citing *Gaus*, 980 F.2d at 566).

## IV.   CONCLUSION

For the reasons explained above, Plaintiffs' motion to remand (Dkt. 6) is GRANTED. Temco's pending motion for a more definite statement (Dkt. 5) is DENIED as moot. The Court ORDERS as follows:

1.  Pursuant to 28 U.S.C. § 1447(c), all claims brought by Plaintiffs are REMANDED to the Superior Court of Thurston County, Washington;

2.  Pursuant to 28 U.S.C. § 1447(c), the Clerk shall mail a certified copy of this Order to the Clerk for the Superior Court of Thurston County, Washington; and

3.  The Clerk shall transmit the record herein to the Clerk for the Superior Court of Thurston County, Washington.

4.  Following remand, the Clerk shall close the case.

Dated this 17th day of June, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING MOTION FOR REMAND - 7